IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANCISCO JOSE AYALA,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:10-CR-1029<br><br>Judge Dee Benson |

      This case is before the court on defendant Francisco Ayala's First Amended Motion to Suppress. (Dkt. No. 29.) On April 26, 2011, the court conducted an evidentiary hearing on the motion. The defendant attended and was represented by Mark J. Gregersen. Timothy J. Williams represented the United States of America. At the conclusion of the evidentiary hearing, the court ordered briefing from the parties. Thereafter, on August 31, 2011, at the parties' request, the court heard oral argument. Having considered the parties' briefs, the evidence presented, and the arguments of counsel, the court enters the following memorandum decision and order.

      Four witness testified at the evidentiary hearing. The United States called Detective Jason Vincent and Agent Russell Johnson. The defendant called Ashlie Mauger and Magdalena

1

Beyale.[1]

**DETECTIVE VINCENT'S TESTIMONY**

Detective Vincent testified as follows:

Late in the evening on October 7, 2010, a confidential informant told Detective Vincent that he knew of gang members that had drugs and firearms, one of which had an obliterated serial number.[2] (Tr. at 8 and 26.) The informant pointed out the house where the gang members, guns, and drugs were located. (Tr. at 9-10.) The informant said that one of the gang members went by the name Rocks. (Tr. at 9.) After Detective Vincent received the information, he assembled a group of officers and agents to investigate the matter further by performing a "knock and talk" at the residence identified by the informant. (Tr. at 11.) Multiple law enforcement officers went to the residence. (Tr. at 13.) Detective Vincent and Agent Johnson went to the front door while other law enforcement officers went into the backyard for officer safety. (Tr. at 13 and 57.) Detective Vincent told the officers that a gun might be visible through a window in the backyard. (Tr. at 58) Detective Vincent thought that the officers may look in through the windows in the backyard. (Tr. at 58.)

Detective Vincent knocked on the front door and Magdalena Beyale answered. (Tr. at 16.) Detective Vincent asked if he could talk to Rocks. (Tr. at 16.) Ms. Beyale initially said that Rocks was at his girlfriend's house. (Tr. at 17.) Detective Vincent asked again if Rocks was

---

[1]Reference to the transcript of the evidentiary hearing conducted on April 26, 2011, will be cited as "Tr. at __."

[2] The events surrounding the search took place late in the evening of October 7, 2010, and early in the morning of October 8, 2010. At the evidentiary hearing the attorneys and witnesses used the dates interchangeably.

there, and Ms. Beyale called his name and he came up the stairs. (Tr. at 17.) The house is a split-level house with a small landing just inside the door and a set of stairs that go up and a set of stairs that go down. (Tr. at 15.) Detective Vincent learned that Rocks' real name is Armando Ayala. (Tr. at 18.) Detective Vincent asked Armando if he would go outside to talk and Armando complied. (Tr. at 19.) While outside, Detective Vincent told Armando he had information that there were guns in the house. (Tr. at 20.) Armando did not immediately admit or deny the presence of guns. (Tr. at 20.) Armando told Detective Vincent that he was associated with the Chicas gang. (Tr. at 21.) Armando also told Detective Vincent that he was a convicted felon. (Tr. at 22.) Detective Vincent asked Armando what kind of guns were in the house. (Tr. at 22.) Armando said that there was a shotgun downstairs. (Tr. at 22.)

Armando offered to go into the house and get the shotgun. (Tr. at 27.) Because of officer safety concerns, Detective Vincent did not want Armando to go into the house to retrieve the gun so he handcuffed Armando and asked if a law enforcement officer could go inside the residence to get the gun. (Tr. at 28-29.) Armando consented to have an officer retrieve the shotgun, and they went back into the house. (Tr. at 28 and 29.)

After entering the house, Detective Vincent told the occupants that he did not have a search warrant and he read aloud a Consent to Search form to Ms. Beyale, Armando, and Francisco. (Tr. at 29 and 37.) Detective Vincent received verbal permission to search the house before the occupants signed the Consent to Search form. (Tr. at 87.) Ms. Beyale, Armando, and Francisco all signed the consent to search form. (Tr. at 32 and 36.) After the parties signed the consent to search form, the other officers entered the house. (Tr. at 38.) Detective Vincent

3

informed the other officers that Armando told him about a shotgun and that they had consent to search the house. (Tr. at 38.)

Francisco asked to talk to Detective Vincent and the two of them went outside. (Tr. at 39.) While outside, Francisco told Detective Vincent that he had a handgun in his room. (Tr. at 39.) Detective Vincent went to Francisco's room and found the handgun in a sock drawer. (Tr. at 42.) Officers also found marijuana in Francisco's room. (Tr. at 44.) Sometime after Armando told Detective Vincent that there was a shotgun in the basement and had invited Detective Vincent into the house, Detective Crotter informed Detective Vincent that she had seen a gun in the backyard through the basement window. (Tr. at 73.)

## **AGENT JOHNSON'S TESTIMONY**

Agent Johnson testified as follows:

Russell Johnson has been an FBI agent for ten years. (Tr. at 89.) On October 8, 2010, Detective Vincent contacted Agent Johnson to assist in a possible gang related firearms violation. (Tr. at 89.) Detective Vincent told Agent Johnson that he had been informed of a gun with an obliterated serial number in a private residence. (Tr. at 90.) Agent Johnson believed the gun was located in a bedroom in the rear of the house. (Tr. at 91.) When law enforcement arrived at the house, Agent Johnson and Detective Vincent went to the front door. (Tr. at 92.) Ms. Beyale answered the door and Detective Vincent had a conversation with her. (Tr. at 92.) During the conversation, Agent Johnson did not hear Detective Vincent use any threatening or compulsory tones with Ms. Beyale. (Tr. at 94.) Detective Vincent was invited into the house and Agent Johnson remained on the front porch but could still see and hear what was going on.

4

(Tr. at 93.)  Eventually, Detective Vincent exited the house with Armando.  (Tr. at 93.)  Agent Johnson checked to see if Armando had any warrants and learned that Armando was wanted in California.  (Tr. at 93.)  After Detective Vincent and Armando had their conversation outside they went back into the house.  (Tr. at 94.)  Agent Johnson followed them into the house.  (Tr. at 94.)  Detective Vincent went up the stairs into the living room; Agent Johnson went halfway up the stairs; and Agent Larson was on the landing just inside the front door.  (Tr. at 94.)  Agent Johnson did not hear anyone give consent to search the home, but Detective Vincent told Agent Johnson that he had received consent to search the house.  (Tr. at 95.)  After Agent Johnson learned that they had consent to search the house, he went to the backyard and told the officers in the backyard that they could come to the front of the house.  (Tr. at 95 and 101.)  While Agent Johnson was in the backyard the officers took him to a window and they shined flashlights in and saw the butt of a gun in the rafters.  (Tr. at 95-96.)  While looking through the window, Agent Johnson saw officers take Francisco from his room.  (Tr. at 96.)  The first time Agent Johnson heard of the gun or saw the gun was after verbal consent had been given to search the house.  (Tr. at 87 and 96.)  Agent Johnson went back into the house and participated in the search of the home.  (Tr. at 97.)  Agent Johnson began searching in Francisco's room then moved to Armando's room.  (Tr. at 97-98.)

**ASHLIE MAUGER'S TESTIMONY**

Ashlie Mauger testified as follows:

Ashlie Mauger is Armando's girlfriend.  (Tr. at 109.)  On October 7, 2010, Ms. Mauger was sleeping at Armando's house.  (Tr. at 112.)  Armando woke up Ms. Mauger and told her that

5

the police were outside. (Tr. at 112.) Ms. Mauger went upstairs and heard the officers ask for Armando, so she returned downstairs to get Armando. (Tr. at 113.) While she was downstairs, she entered Francisco's room and saw the cops shining lights into the room. (Tr. at 113-114.) Ms. Mauger turned on Francisco's light, attempted to wake him up and turned off his light as she exited the room. (Tr. at 125.) Ms. Mauger said that Francisco stayed asleep. (Tr. at 125.)

**MAGDALENA BEYALE'S TESTIMONY**

Magdalena Beyale testified as follows:

Magdalena is Francisco and Armando's stepmother and lives with them. (Tr. at 131.) The backyard of the property where they live is enclosed by a fence. (Tr. at 132.) Ms. Beyale first noticed the police when they began knocking on her door. (Tr. at 133.) When she answered the door, the officers asked to speak to Armando. (Tr. at 134.) She remembers Armando going outside with the officers and then returning to the house. (Tr. at 133.) Ms. Beyale signed a consent to search form. (Tr. at 135.) Officers began searching the house before she signed the consent form. (Tr. at 136.) Ms. Beyale heard officers talking about a gun in a duffel bag. (Tr. at 135.) She understood that the officers had seen a gun through a window in the basement. (Tr. at 135.)

## **FINDINGS OF FACT**

Having listened to the testimony and carefully assessed all of the evidence in this case, including the demeanor of the witnesses, the court finds the relevant facts as follows. Detective Jason Vincent has been a police officer for 8 years and has been involved in numerous gang investigations. Late in the evening of October 7, 2010, an informant told Detective Vincent that

he knew of gang members that had firearms, one of which had an obliterated serial number, and drugs. The informant showed Detective Vincent the house where he believed the guns and drugs were. The informant also told Detective Vincent that one of the gang members went by the name Rocks. Detective Vincent assembled a group of officers and agents to investigate the possession of illegal firearms. (Tr. at 11 and 23.) Law enforcement officers met at a Deseret Industries store parking lot where Detective Vincent relayed the information to the officers, including information about a gun that might be visible through a basement window.

After leaving the Deseret Industries parking lot, the officers went to the house to conduct a "knock and talk." There were seven law enforcement officers at the house, three West Valley City officers, three F.B.I. agents, and an F.B.I. task force officer who is also a West Valley Detective. Prior to making contact with the occupants of the house, the officers spread out. Detective Vincent and Agent Johnson went to the front door, Agent Larsen was in the front yard, and Agent Quirt and Detective Crotter, went to the backyard. (Tr. at 56-57, and 92.)

After Detective Vincent knocked on the front door, Ms. Beyale, the defendant's stepmother, answered. Detective Vincent asked to talk to Armando. Detective Vincent did not have his weapon drawn or speak with a threatening or compulsory tone. Ms. Beyale invited Detective Vincent into the house. (Tr. at 17 and 93.) The house is a split-level house with a small landing just inside the door and a set of stairs that go up and a set of stairs that go down. Agent Johnson remained on the front porch but could see what was going on in the house. (Tr. at 93.)

Armando was in the basement and heard the officers upstairs. Armando woke up his

7

girlfriend, Ashlie Mauger, who went upstairs to see what was going on. While upstairs, Ms. Mauger heard the officers ask to speak to Armando. Ms. Mauger then went downstairs to tell Armando that the officers wanted to speak with him. (Tr. at 113.) While downstairs, Ms. Mauger went into Francisco's room and saw officers shining flashlights through the bedroom window. (Tr. at 113-14.) When Ms. Mauger saw the officers shining lights through the window Detective Vincent was in the house and Agent Johnson was on the front porch.

After Armando went upstairs, Detective Vincent asked Armando if they could go outside and talk. Armando agreed to talk to Detective Vincent and they went into the front yard. While outside, Detective Vincent told Armando that he had information that there were guns in the house. Armando did not initially admit or deny the presence of guns. After Detective Vincent and Armando spoke for a few minutes Armando stated that he was a parole fugitive and a convicted felon for assault with a firearm. Detective Vincent gave Agent Johnson Armando's identifying information so Agent Johnson could check for any warrants. While Agent Johnson was checking for warrants, Detective Vincent asked Armando what kind of guns were in the house. (Tr. at 22.) Armando admitted he had a shotgun in the basement. (Tr. at 22.) Armando offered to go into the house and get the shotgun. However, Detective Vincent was concerned about officer safety, so he handcuffed Armando and asked if a law enforcement officer could go and get the gun. (Tr. at 28-29.) Armando consented to have an officer retrieve the shotgun, and they went back into the house. (Tr. at 28 and 29.)

After Detective Vincent and Armando went back into the house, they went upstairs and Detective Vincent spoke to Ms. Beyale. (Tr. at 29.) Shortly thereafter, Detective Vincent

informed Agent Johnson that they had received consent to search the house. (Tr. at 95.) Detective Vincent was concerned about officer safety so he sent officers into the basement to get Francisco. Agent Johnson went into the backyard and told the officers they could come into the house. (Tr. at 95.) While Agent Johnson was in the backyard he and two other officers shined flashlights into a bedroom window and saw the butt of a gun. (Tr. at 95-96.) Agent Johnson also saw officers get Francisco from his room. (Tr. at 96.) After Francisco went upstairs Detective Vincent read aloud a Consent to Search form to Ms. Beyale, Armando, and Francisco. (Tr. at 29.) Ms. Beyale, Armando, and Francisco all signed the Consent to Search form. (Tr. at 32.) Detective Vincent had received verbal consent to search prior to receiving written consent. (Tr. at 87.) Officers inside the house received both verbal and written consent to search before they were informed that the officers in the backyard had shined a flashlight into a basement window and had observed a shotgun inside the house. When Detective Vincent filled out the Consent to Search form he wrote down the wrong address. However, Ms. Beyale noticed the address was wrong and Detective Vincent corrected the address. Detective Vincent made sure that Ms. Beyale, Armando, and Francisco knew that their house was the house he wanted to search. (Tr. at 37.)

While Armando was signing the Consent to Search form, Francisco interrupted and asked to go outside to talk to Detective Vincent. Detective Vincent and Francisco went outside and Francisco said he had a handgun in his bedroom. Officers subsequently searched Francisco's room and found the handgun.

During the search of the house officers found some bags with suspected controlled

9

substances in them, drug paraphernalia, a shotgun, a handgun, and some ammunition. (Tr. at 43 and 70.)

## **DISCUSSION**

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by government actors. *See* U.S. Const. Amen. IV; *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996). In this case, the defendant claims that the officers violated his Fourth Amendment rights "because officers breached the backyard curtilage, peered into a window to see Francisco Ayala and a shotgun, seized Francisco, and searched his room yielding drugs, firearms, and statements." (Dkt. No. 37.)

The curtilage of the home receives the Fourth Amendment protections that attach to the home itself. *Unties States v. Knapp*, 1 F.3d 1026, 1029 (10th Cir. 1993). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 446 U.S. 170, 180 (1984).

In *United States v. Dunn*, 480 U.S. 294, 301 (1987), the Supreme Court stated that four factors should be considered in determining whether areas around a house are protected by the Fourth Amendment: (1) the proximity of the area to the home; (2) inclusion of the area within an enclosure surrounding the home; (3) the nature of the uses of the area; and (4) steps taken by the resident to protect the area from observation.

Applying the *Dunn* factors, the court concludes in this case that the backyard is within the curtilage of the home and entitled to the protections of the Fourth Amendment. When the law enforcement officers arrived at the house, at least two officers went into the backyard, which

is fully enclosed and not accessible to the public. While in the backyard, they shined lights into the windows and saw the butt of a shotgun. The officers in the backyard acted in violation of the Fourth Amendment.

The critical issue in this case is whether the actions of the officers in the backyard led to the discovery of the guns and drugs. When there is a constitutional violation the proper inquiry is to determine whether the evidence was obtained through the violation or by means sufficiently attenuated from the constitutional violation to purge the evidence of any taint. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The Supreme Court has emphasized that the "attenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" *New York v. Harris*, 495 U.S. 14, 18 (1990) (quoting *United States v. Crews*, 445 U.S. 463, 471).

In this case, the police conduct in the backyard did not lead to the search for or the discovery of the disputed evidence. The testimonies of Detective Vincent and Agent Johnson show that the officers had received voluntary consent to search the house prior to learning about the activities of the officers in the backyard. The evidence in this case was not "come at by exploitation of . . . the defendant's Fourth Amendment rights," and it is not necessary to inquire whether the taint of the Fourth Amendment violation was sufficiently attenuated to permit the introduction of the evidence. *Id*. Here, Armando and Francisco admitted to the guns and Ms. Beyale gave verbal consent to search the house, which was followed by Ms. Beyale, Armando, and Francisco all signing a written Consent to Search form. The illegal activities of the officers in the backyard had no bearing on the actions of Detective Vincent in obtaining consent to search

the house.

## **CONCLUSION**

Having determined that the challenged evidence is not the product of illegal governmental activity, the defendant's Motion to Suppress is DENIED

DATED this 4th day of October, 2011.

Dee Benson
United States District Judge